**TAYLOR ENGINES, Inc. et al. v. ALL STEEL ENGINES, Inc. et al.**

No. 12621.

United States Court of Appeals Ninth Circuit.

Oct. 26, 1951.

Rehearing Denied Dec. 5, 1951.

White & White, Arlington C. White and Margaret E. White, San Francisco, Cal., for appellants.

Fred A. Watkins, San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and STEPHENS and ORR, Circuit Judges.

ORR, Circuit Judge.

The trial Court found that appellants had infringed certain patents, granted an injunction permanently restraining further infringement, and ordered an accounting.

Lloyd M. Taylor, a defendant in the court below but not an appellant here, conceived the idea of a new type of internal combustion engine and in 1937, in consideration of services and financial support, assigned to appellee Selig a half interest in the invention, in any and all improvements thereof, and in any patents granted thereon. Patents were applied for and in due course issued, naming Taylor as the inventor. To facilitate exploitation of the invention All Steel Engines, Inc., was incorporated under the laws of California, hereinafter referred to as the California corporation. To this corporation Taylor and Selig granted an exclusive license to make, use and vend the invention and any improvements thereon. Due to dissatisfaction with terms imposed by the Corporation Commissioner of California in regard to the amount of stock the corporation would be permitted to issue in return for the license, it was decided to abandon the California corporation. A new corporation, All Steel Engines, Inc., hereinafter referred to as the Nevada corporation, appellee here, was formed under the laws of Nevada, as the vehicle for exploitation of the invention. By instrument dated September 18, 1940 and acknowledged November 1, 1940, Taylor and Selig granted a similar exclusive license to the Nevada corporation. This instrument was not recorded in the Patent Office pursuant to the requirements of 35 U.S.C.A. § 47. On November 1, 1940 the abandoned California corporation reassigned to Taylor and Selig the license it had previously acquired from them. Subsequently, Taylor interested a different group of associates to assist in exploiting the invention and, at a formal meeting held March 6, 1941, the new associates being present, an attempt was made to buy Selig's and the Nevada corporation's interest in the invention. No agreement was reached and, on April 24, 1941, Taylor assigned an undivided one-quarter interest in the patents to Smith, Gorman and Brown. Simultaneously, the same parties assigned all of their interest in the patents to Taylor Engines, Inc., a then recently organized corporation under the laws of Nevada. Taylor then brought suit in a California state court against appellees seeking a declaratory judgment determining the interests of the parties in the invention. The suit resulted in a judgment finding the Nevada corporation to have a valid exclusive license. Taylor v. Selig, 1946, 28 Cal.2d 634, 170 P.2d 913. Thereafter, Taylor Engines, Inc., continuing its efforts to exploit the invention, granted an exclusive license to make, use and sell the invention to the Crosley Corporation (not a party to this suit). Selig and All Steel Engines, the Nevada corporation, joined in bringing this suit for infringement against Smith, A. Gorman, Brown, J. Gorman and Brotherhood, all present or past officers of Taylor Engines, and against Taylor Engines.

I. Ownership of the Patents.

Our first concern is with a definition of the interests of the respective parties to the patents in suit. The appellants contend, and the trial Court found, that the license to the Nevada corporation was executed on September 18, 1940. Hence, it is argued by appellants, that the Nevada corporation took nothing under it because Taylor and Selig had previously divested themselves of all interest in the patents by the prior grant to the California corporation, and had taken no reassignment thereof, and, since the Nevada corporation had received no title by the purported transfer, the California corporation was in a position to and did at a later date effectively reconvey to Taylor and Selig, and this conveyance of the California corporation to Taylor and Selig is relied on by appellants as a link in the chain of their claimed title. The trial Court resolved the question as to whom the title belonged by

applying the doctrine of after-acquired title, holding that the assignment by Taylor and Selig of an exclusive license to the Nevada corporation was in all respects an assignment of the patent rights, carrying with it an implied warranty of title, and that the later acquisition by Taylor and Selig, its grantors, of title to the patents from the California corporation, inured to the benefit of their prior grantee, the Nevada corporation. Thus, when Taylor later attempted to convey to the appellants he had nothing to convey. D.C.N.D.Cal.1950, 88 F.Supp. 745, 747. We agree with the result reached by the trial Court but prefer to base our decision on the broad equitable principle that where one purports, for value, to convey title to personal property which he does not own, as between the grantor subsequently acquiring title and the grantee, the latter should have the property. Where, as here, the grantor subsequently acquires such title to personalty equity will enforce the grantee's interest to prevent unjust enrichment of the grantor. Thus, in the present case when the California corporation reconveyed to Taylor and Selig they held the property in the patents subject to the equitable claim in the Nevada corporation.[1] The equitable claim of the Nevada corporation could have been cut off by a sale to a bona fide purchaser, but the appellants have failed to place themselves in that class. The trial Court found, on substantial evidence, that at the time the individual appellants took the conveyance from Taylor they took with notice of the prior exclusive license to the Nevada corporation. Taylor Engines was formed by appellants for the purpose of acquiring title to the patents and exploiting them; they were its officers and acted on its behalf, as well as individually, in the transaction whereby the corporation acquired its interest in the patents. These circumstances impute the knowledge of the individuals to the appellant corporation. 3 Fletcher, Cyclopedia of Corporations, §§ 799, 803, 809, 827 (1947). This same notice

precludes appellants from relying on the statutory requirement of recordation of patent assignments. 35 U.S.C.A. § 47.

■ Appellants argue that, in any event, they have absolute ownership of one of the patents in issue for the reason that said patent is not an improvement of the basic patent granted in the exclusive license to the Nevada corporation. The trial Court, on substantial evidence, found the patent in question was an improvement and, hence, its finding must be sustained. Pointer v. Six Wheel Corporation, 9 Cir., 1949, 177 F.2d 153.

### II. Infringement.

■ Appellees charged infringement in that appellants licensed Crosley Motors, Inc., a corporation, to manufacture the engine described in the patents, and the trial Court so found. Appellants contend that this finding had no support in the evidence. While appellants' position on this question is not clearly spelled out, their contention seems to be bottomed upon the theory that the mere granting of a license to the use of the patent rights without subsequent action under such license, such as a manufacture, use or sale of a physical embodiment of an infringing device, does not constitute infringement, and that there is no evidence of either manufacture, use or sale by Crosley Motors, Inc. We do not agree. We find substantial evidence in the record of manufacture by the Crosley corporation, which sustains the finding of the trial Court.

### III. Laches and Acquiescence.

■ Other errors relied on by appellants relate to findings of the trial Court that appellees had not slept on their rights to the extent they are guilty of laches or acquiescence. We think the trial Court's findings in the particulars complained of were correct. During the period of time in question appellees were busy defending their title in the suit brought against them by Taylor in the state court; and the appellants at all relevant times had notice of

1. Cf. Frankfurter, J., dissenting in Scott Paper Co. v. Marcalus Co., 1945, 326 U.S. 249, 258–260, 66 S.Ct. 101, 90 L.Ed. 47; 1 Williston, Sales, § 131; and, see, Ullman, Protection of the Grantee under Estoppel by Deed, 39 Dick.L.Rev. 241 (1935).

the existence of the appellees' claim and the suit pending in the state court. Such inaction on the part of the appellees as did occur was necessary and excusable and not of such a nature as to bar relief.

Judgment affirmed.