Arnold L. Fein, J.
On or about August 16, 1963, petitioner, judgment creditor of one Florence Sutton for $724.26, caused *142 respondent bank to be served with a third-party subpoena and restraining order (Civ. Prac. Act, § 781). The bank responded that it was holding 32 shares of AT&T stock owned by the debtor as collateral security on a $5,830.56 loan made September 17, 1962, repayable in 36 monthly installments.
On or about April 27, 1965, $1,692 being due on said loan, at the judgment debtor’s request respondent extended payment of the balance for an additional 36 months. Following its usual procedure, the bank cancelled the prior promissory note and accepted debtor’s new note, the entire proceeds of which were used to satisfy and cancel the old note, no additional funds being loaned to the borrower. All the stock was retained as collateral.
'Contending this was a violation of the restraining order, petitioner instituted this proceeding, by petition and notice of motion, requesting judgment directing respondent to turn over to petitioner sufficient moneys to satisfy the balance of petitioner’s judgment against the judgment debtor, or directing respondent upon the expiration of judgment debtor’s original loan to turn over to petitioner sufficient moneys to satisfy Said balance or to turn oxer to a Sheriff Or City Marshal the stock held by respondent as collateral to be sold by the Sheriff or Marshal in satisfaction of the balance, or in the exent respondent disposes of the stock by virtue of a default to turn over to petitioner the balance remaining, in payment on account or in satisfaction of the judgment, and to continue the restraining provisions past August 15, 1965, until the foregoing was accomplished.
Said motion was denied (Riccobono, J., June 30, 1965), except to the extent of continuing the restraining order for a period of 36 months plus an additional two months or until the judgment was satisfied or vacated, whichever event occurs first.
On petitioner’s motion to reargue, said order was vacated and an order made (Riccobono, J., Sept. 21,1965) setting the matter down for a hearing, and final disposition, which came on before me.
The parties submitted the controversy on an agreed statement of facts, set forth in respondent’s memorandum of law. Petitioner cited no authorities whatever in support of his contention that the renewal of the loan violated the restraining order. The subpoena was served on or about August 16, 1963. The CPLR became effective September 1, 1963, The bank’s renewal loan was made on or about April 27, 1965, the critical date respecting the alleged violation of the restraining order. Under article 52 of the CPLR and its predecessor Civil Prac *143 tice Act sections, the interest of a judgment debtor in pledged property, including certificates of stock, is subject to restraint, execution, levy and sale, and turnover.
At all times after she turned her stock over to the bank as collateral for the loan, the interest of the judgment debtor in the stock was that of a pledgor, entitled to a return of the stock only upon payment of the balance due the bank. The bank could, at any time, sell the collateral and apply the proceeds against the unpaid balance of the loan. This was the status at the time of the service of the restraining notice on the bank, and also on the day the bank issued the new note extending the time for payment of the balance due on the old note, except that by then a lesser amount was due the bank. Except for possible provisions of the Banking Law, not necessary to explore here, the bank could have allowed the old note to remain in existence and permitted the debtor to make payments over an extended period against the unpaid balance or it could have sold the collateral and applied the proceeds to the balance. It was not obliged to do either.
That the bank, in accordance with banking custom, caused the old note to be marked paid and required a new note for the extended period, did not change the relationship. The form of the transaction did not alter its substance. The parties merely entered into a new paper transaction preserving the existing interest of each in the collateral. At every instant of the transaction debtor owed the bank the balance and the bank held the collateral to protect it.
The papers executed were only evidence of a debt; the same debt which pre-existed service of the subpoena. The taking of the original note by the bank was obviously not payment. It evidenced the debt incurred at that time. Renewal notes of the original party are likewise not payment, but merely evidence, even though the original note be marked “ paid ” (Jagger Iron Co. v. Walker, 76 N. Y. 521). In Industrial Bank of Commerce v. Shapiro (276 App. Div. 370, affd. without op. 302 N. Y. 566), money was borrowed from a bank, secured by a properly filed chattel mortgage, on an automobile. The borrower sold the automobile to the defendant, and then, without advising the bank of the sale, obtained a larger loan from the bank, collaterized by a new chattel mortgage on the automobile in the larger amount, the bank using part of the proceeds of the new loan to pay off the old loan and marking the original note paid. Thereafter the process was repeated by the borrower with a third note and chattel mortgage in a still larger amount. The *144 defendant, purchaser of the car, was held liable to the bank in conversion for the amount due on the original note and chattel mortgage on the date of the purchase, the court stating (p. 373): “ When the first note * * * was marked paid it was merely renewed. The fact that the second note was larger in amount does not prevent its being a renewal to the amount of the prior note. Only the excess over the previous note was paid in cash * * * the rest was just a bookkeeping trans-
action. The original debt was not extinguished. Marking the first note paid signified that the first negotiable instrument which evidenced the debt had been cancelled and superseded pro tanto by another. It is well established that a second chattel mortgage upon the same property covered by a former chattel mortgage, to secure the same debt, is not of itself a cancellation of such first mortgage, even though the second has been given to secure a larger loan (Hill v. Beebe, 13 N. Y. 556; Shuler v. Boutwell, 18 Hun 171; Gregory v. Thomas, 20 Wend. 17). * * * A debt is not honestly extinguished till it is paid in cash * * *. In this case, the first chattel mortgage, on which alone defendant is liable, stated that it was given to secure the first note, which meant presumptively that it was given also to secure the debt for which the note was given. When the first note was later renewed, the debt was not thereby extinguished.” The original debt subsisted as did the original collateral. The form of the transaction is not controlling (Cohen v. Rossmoore, 225 App. Div. 300; Garfield Nat. Bank v. Wallach, 223 App. Div. 303).
Nor is it of any avail to the judgment creditor that the bank granted an extension for payment of the pre-existing indebtedness, retaining the collateral. (Bank of United States v. Chemical Bank & Trust Co., 140 Misc. 394.) There a judgment creditor sought to obtain, as property of the judgment debtor, a deposit previously made by the debtor for continuing electrical service. The court held that, since the third party was entitled to have the deposit held intact as security for the payment of future bills, the judgment creditor could not reach the fund. The bank was at all times and is now entitled to retain the security of the collateral. The restraining order and its lien only attach to the interest of the judgment debtor. The judgment creditor stands in the shoes of the judgment debtor (Central Suffolk Hosp. Assn. v. Downs, 213 N. Y. S. 2d 192; Palmer v. Tremaine, 259 App. Div. 951; Atlas Adv. Agency v. Casa Cubana, 259 App. Div. 951; Matter of Capitol Distrs. Corp. v. 2131 Eighth Ave., 285 App. Div. 541, affd. without op. 1 N Y 2d 842). The diversity of results in the cited cases estab *145 lishes that the critical test is whether the judgment debtor has an interest which he might reach during the period covered by the restraining order or notice. Only that interest may be reached by his creditor, and only at the time and to the extent it is ripe.
Accordingly, on the present showing the bank cannot be required to turn over the collateral or to pay over to the judgment creditor an amount equal to the balance due on his judgment. There was no violation of the restraint. It is no answer to say the bank may again extend the loan, three years from now. The judgment creditor could always and may now reach whatever interest the judgment debtor has in the collateral over and above the interest of the bank. He may now, if so advised:
(1) Issue an execution directing the Sheriff to levy on the interest of the judgment debtor, which the Sheriff may sell provided it will not interfere with the interest of the pledgee (CPLR 5225, subd. [b]; 5232, subd. [b]; 5233, subd. [a]; Hoffman v. Columbia-Knickerbocker Trust Co., 157 App. Div. 434); or,
(2) Apply for a turnover of the excess of the collateral over the balance due the bank (Matter of Slaff v. Slaff, 9 A D 2d 80, mot. for lv. to rearg. app. den. 10 A D 2d 558; see Rodac Distr. Corp. v. Crafcon Corp., 15 Misc 2d 196; Levy v. Tubby’s Wine & Liq. Shop, 110 N. Y. S. 2d 653, revd. on other grounds 116 N. Y. S. 2d 707; Matter of Liberti Contrs. v Bermuda Bldg. Corp., 14 Misc 2d 403; and Matter of Myer, 273 App. Div. 387, holding the parties’ interests in stock could be preserved only by the appointment of a Receiver and sale by a Receiver under the court’s supervision rather than a Sheriff’s sale); or
(3) Move, on notice to the bank and the judgment debtor, for an order directing both to execute the necessary documents to make possible a sale of the stock and a division of the proceeds in accordance with the respective interests and priorities of the bank and the judgment debtor, in whose shoes he stands. (CPLR 5225, subd. [c]; Bartley v. Bartley, 255 App. Div. 992; Matter of Mfrs. Trust Co. v. Meb Rest, 29 Misc 2d 475; Bender v. Kolber, 259 App. Div. 1023.)
Neither party has advised the court, by testimony or otherwise, whether the collateral now exceeds in value the balance due the bank. To the extent of the moneys due him, on the judgment, the judgment creditor would be entitled to such excess, if any, plus any amount added by the bank as charges in connection with the renewal note, since the amount of such charges did not exist prior to the service of the restraining order. The judgment creditor is entitled to a continuing *146 restraining order. Motion denied, except to the extent of continuing the restraining order until July 27, 1968 (two months after the expiration of the renewal note), or until the judgment is vacated or satisfied, whichever is sooner.